# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | Civil Action No. 13-cr-134 |
| ALFREDO MOSQUERA-MURILLO, JOAQUIN CHANG-RENDON, and ANTONIO MORENO-MEMBACHE, | Chief Judge Beryl A. Howell |
| Defendants. | |

## MEMORANDUM AND ORDER

On September 14, 2018, the D.C. Circuit's mandate issued remanding this case for resentencing of the three defendants, Alfredo Mosquera-Murillo ("Murillo"), Joaquin Chang-Rendon ("Rendon"), and Antonio Moreno-Membache ("Membache"), *see* Mandate, ECF No. 266, in accordance with that Court's holding that the defendants' convictions for violation of the Maritime Drug Law Enforcement Act ("MDLEA"), 46 U.S.C. §§ 70503 and 70506(b), did not bar their eligibility for safety-valve relief, *see United States v. Mosquera-Murillo*, 902 F.3d 285, 292 (D.C. Cir. 2018). Specifically, the D.C. Circuit directed, on remand, that this Court "consider whether the defendants meet the five remaining safety-valve requirements." *Id.* at 296.

Shortly after issuance of the mandate, the parties were directed to confer and propose a resentencing date, Minute Order (Sept. 17, 2018), but instead the parties suggested that a status conference be held, with waiver of the defendants' presence, "to discuss how to proceed with the resentencing of the defendants," Parties' Joint Report on Resentencing Schedule at 1, ECF No. 268. At the requested status conference, the parties outlined issues they believed required resolution at the resentencing hearing and were directed again to confer and submit another joint report summarizing, *inter alia*, those issues requiring an evidentiary hearing, Minute Order (Oct.

1

29, 2018), which lengthy, 22-page report they timely submitted, Joint Status Report ("JSR"), ECF No. 271.

The defendants raise a myriad of issues in the JSR as requiring resolution at a further hearing in a valiant effort to clean the slate of what has come before in this case, but the issue remanded for consideration at resentencing is "whether the defendants meet the five remaining safety-valve requirements." *Mosquera-Murillo*, 902 F.3d at 296. If the defendants do not—and indisputably, no defendant currently satisfies all five safety-valve requirements—each defendant's sentence remains exactly the same: 120 months' imprisonment, the mandatory minimum sentence agreed to in their plea agreements, which were accepted by the Court, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), on each defendant's guilty plea to one count of conspiring to distribute, and possess with intent to distribute, at least 5 kilograms of cocaine and 100 kilograms of marijuana on board a vessel subject to the jurisdiction of the United States, in violation of the MDLEA, 46 U.S.C. §§ 70503, 70506(b) and 21 U.S.C. §§ 960(b)(1)(B), (b)(2)(G). *See* Plea Agreements ¶¶ 1, 6, ECF Nos. 185, 188, 191. If any defendant is safety-valve eligible, this Court must then determine the appropriate sentence to be imposed at or below 120-months' incarceration, upon consideration of the factors set out in 18 U.S.C. § 3553(a).

Nevertheless, the defendants raised at the status conference and in the JSR several issues that have either already been resolved in this case or are extraneous to the single issue required by the mandate to be resolved at resentencing. That single issue is whether any defendant meets the five safety-valve requirements, listed in 18 U.S.C. § 3553(f) and incorporated verbatim into the U.S. Sentencing Guidelines, U.S.S.G. § 5C1.2(a). To re-focus the parties on this issue, which, in the case's current procedural posture, is the only means by which any defendant may

obtain a different sentence than that already imposed, set out below are the legal and factual issues raised in the JSR that are either extraneous or already resolved, and the issues in the JSR appropriately to be addressed at the evidentiary hearing for purposes of resentencing.

## I. ISSUES ALREADY RESOLVED OR UNNECESSARY TO RESOLVE

The JSR indicates that the defendants seek to relitigate factual determinations already conceded and/or irrelevant to determination of their safety-valve eligibility, including (1) the quantity of illegal narcotics recovered from the *Mistby* go-fast boat on June 19, 2012, *see* JSR at 2–3, 5 & n.3, 6–7, 9–10; *but see id.* at 11 (Rendon concedes the *Mistby* quantity); and (2) the subsequent testing of those drugs by Drug Enforcement Administration chemists, *id.* at 5 n.3, 9–10. Resolution of these issues falls outside the mandate of the D.C. Circuit and, thus, resolution is unnecessary for purposes of resentencing.

### A. Quantity of Narcotics Recovered from the *Mistby* Has Been Resolved

Each defendant, in pleading guilty, stipulated to a Joint Statement of Facts ("SOF") incorporated into his plea agreement, stating that "[t]he Government can prove beyond a reasonable doubt that: . . . United States law enforcement personnel . . . recovered over 220 kilograms of cocaine and 235 kilograms of marijuana that had been jettisoned into the water" from the *Mistby*. *See* Murillo Joint Statement of Facts ("Murillo SOF") ¶ 4, ECF No. 186; Rendon Joint Statement of Facts ("Rendon SOF") ¶ 5, ECF No. 189; Membache Joint Statement of Stipulated Facts ("Membache SOF") ¶ 3, ECF No. 192; Plea Agreements ¶ 2. Indeed, at the end of each SOF, each defendant acknowledged "that this proffer of facts is true and accurate." *See* Murillo SOF at 4; Rendon SOF at 4; Membache SOF at 4. By so acknowledging, each defendant conceded that the government "can prove" the amounts of illegal narcotics recovered from the *Mistby* beyond a reasonable doubt, thereby necessarily agreeing that those drug

3

quantities could be proven under the lesser preponderance of the evidence standard applicable to a sentencing hearing. *See United States v. Burnett*, 827 F.3d 1108, 1120 (D.C. Cir. 2016) ("A district court makes findings of drug quantities under a preponderance of the evidence standard."); *United States v. Bell*, 795 F.3d 88, 103–05 (D.C. Cir. 2015) (distinguishing between elements of a crime that must be found beyond a reasonable doubt and other facts that can be found by a sentencing judge relying on a preponderance of the evidence standard). Indeed, each defendant expressly agreed to "waive any right to have facts that determine his sentence under the guidelines alleged in the indictment or found by a jury beyond a reasonable doubt." Plea Agreements ¶ 14.

This plain reading of the plea agreements and SOFs is confirmed by examination of other SOF paragraphs that use different language than that used to describe the *Mistby* facts, which, again, the defendants agreed "[t]he Government can prove beyond a reasonable doubt." Murillo SOF ¶ 4; Rendon SOF at ¶ 5; Membache SOF ¶ 3. By contrast, other paragraphs summarize factual matters that "*[t]he Government contends* that it can prove beyond a reasonable doubt," Murillo SOF ¶¶ 6, 7; Rendon SOF ¶¶ 6, 7; Membache SOF ¶¶ 5, 6 (emphasis added), and also emphasize the disputed nature of these facts with the caveat that the defendants contested the factual matter, *compare, e.g.,* Murillo SOF ¶ 4, *with id.* ¶ 6 (stating "Defendant disputes the foregoing statements in this paragraph" regarding factual assertion of seizure of 318 kilograms of cocaine from a stash house in Buenaventura, Colombia), *with* ¶ 7 (stating "Defendant contends that the total amount of cocaine involved in this conspiracy that was reasonably foreseeable to the Defendant was five (5) kilograms or more and that the total amount of marijuana involved in this conspiracy that was reasonably foreseeable to the Defendant was fifty (50) kilograms or

4

more," in contrast to government's contentions); Rendon SOF ¶ 5, *with id*. ¶¶ 6, 7 (same); Membache SOF ¶ 3, *with id*. ¶¶ 5, 6 (same).

Thus, the quantity of illegal controlled substances recovered from the *Mistby* is an issue already resolved and no further evidentiary hearing on this issue is necessary. Similarly, the additional issue referenced by Membache's counsel regarding the "Reliability of the Drug Tests," JSR at 9–10, of the substances recovered from the *Mistby* is irrelevant for purposes of resentencing.

In any event, since each defendant agreed that the total amount of cocaine involved in the conspiracy reasonably foreseeable to him was "five (5) kilograms or more," Murillo SOF ¶ 7; Rendon SOF ¶ 7; Membache SOF ¶ 6, absent safety-valve eligibility, each is subject to the 120-month statutory mandatory minimum under the MDLEA, *see* 46 U.S.C. § 70506 (setting punishment for a first offense of *id.* § 70503 as provided in 21 U.S.C. § 960, which provides a mandatory minimum of 10 years for offenses involving 5 kilograms or more of cocaine), if they persist in their guilty pleas.[1]

### B. Government's Evidence Pertinent Only to Guideline Determinations Is Unnecessary

The government indicates in the JSR an intent to present evidence relevant to a precise guideline determination for each defendant, including the applicability of various Specific Offense Characteristics under U.S.S.G. § 2D1.1. Specifically, the government intends to present evidence regarding: (1) other relevant conduct and associated drug quantities, including 318 kilograms of cocaine seized in March 2012 by Colombian National Police from a stash house in

---

[1] No defendant has indicated any intention to withdraw his guilty plea, an understandable position given the strength of the government's wiretap and other evidence, and the benefit of the plea agreement capping each defendant's sentence at 120 months' imprisonment, as opposed to what the Probation Office calculated could be 262 to 327 months' imprisonment for Murillo and Membache and 235 to 293 months' imprisonment for Rendon. *See* Murillo Revised Final PSR ("Murillo PSR") ¶ 66, ECF No. 247; Membache Revised Final PSR ("Membache PSR") ¶ 67, ECF No. 249; Rendon Revised Final PSR ("Rendon PSR") ¶ 68, ECF No. 248.

5

Buenaventura, Colombia, "as well as over 1350 seized kilograms of cocaine from other shipments that are part of the same course of conduct and/or common scheme or plan," JSR at 2–3, 6–7, 11; *see* Murillo PSR ¶ 13; (2) each defendant's bribery of a law enforcement officer, JSR at 3, 7, 11; (3) Murillo's knowing distribution of a controlled substance to a minor under 18 years of age, *id.* at 4; (4) Murillo and Membache's involvement of a minor under 18 years of age in the instant offense, *id.* at 4, 7; and (5) Rendon's abuse of a position of trust, *id.* at 11. This proffered evidence may be critical to a guideline determination for each defendant but not for the focused purpose of resentencing in this case.

At the prior sentencing hearing, the Court determined, with the parties' agreement, that it was not necessary to calculate a sentencing guidelines range for a sentence based on a Rule 11(c)(1)(C) plea to a mandatory minimum, provided that the Court made clear that the guidelines were irrelevant to the sentence it imposed. *See* Transcript of Sentencing Hearing (July 29, 2016) ("Sentencing Tr.") at 73:18–74:13, 76:1–11, ECF No. 264. Justifiable reasons were present for the government to extend, and the Court to accept, the plea agreements regardless of the guideline determination, given the substantial prison terms set out in the agreements and the nature of the evidence, much of which was collected overseas by foreign law enforcement agents. *See Koons v. United States*, 138 S. Ct. 1783, 1788–89 (2018) (recognizing that, in some guilty pleas, such as where the district court "scrap[s] the ranges in favor of the mandatory minimums," guidelines ranges play no relevant part in the defendant's ultimate sentence); *Hughes v. United States*, 138 S. Ct. 1765, 1773 (2018) (noting that the "court may not accept [an (11)(c)(1)(C)] agreement unless the court is satisfied that . . . 'the agreed sentence is outside the applicable guideline range for justifiable reasons; and . . . those reasons are set forth with specificity.'") (quoting U.S.S.G. § 6B1.2(c)).

The government's proffered evidence potentially has relevance in evaluating the safety-valve eligibility of any defendant, and that relevance pertains only to whether each defendant provides truthful information about the offenses "that were part of the same course of conduct or of a common scheme or plan." 18 U.S.C. § 3553(f)(5). As noted, no debriefing of any defendant has yet occurred. Thus, anticipating the need to present this evidence as to safety-valve eligibility is premature since this need hinges on whether the government evaluates the veracity and completeness of a defendant's debriefing negatively and on whether the defendant challenges that negative evaluation with sufficient evidence, including his own testimony, to sustain his burden of proof to establish that he has actually provided truthful and complete information, in the face of any evidence presented by the government. *See United States v. Gales*, 603 F.3d 49, 52–54 (D.C. Cir. 2010) (noting that it is the defendant's burden to establish safety-valve eligibility and affirming denial of safety-valve eligibility, upon finding that "[t]he district court did not clearly err in thinking it highly unlikely that [defendant] did not have any further information on the identity of his steady supplier, whom he claimed to have known for ten years, beyond the vague description given to the government"); *United States v. Mathis*, 216 F.3d 18, 29 (D.C. Cir. 2000) (defendant "bears the burden to establish by a preponderance of the evidence that he is entitled to safety[-]valve relief"); *United States v. Montanez*, 82 F.3d 520, 523 (1st Cir. 1996) ("It is up to the defendant to persuade the district court that he has 'truthfully provided' the required information and evidence to the government.").

Therefore, to the extent that the evidence proffered by the government is relevant to the guideline determination only, that evidence is not necessary to be heard at any evidentiary hearing for purposes of resentencing, unless following each defendant's debriefing with the government, such evidence becomes relevant to evaluation of safety-valve eligibility. The Court

will direct the parties to submit periodic status reports on when each defendant has agreed to participate in the requisite debriefings, when these debriefings have been conducted, the government's evaluation of those debriefings, and whether any defendant disputes the government's evaluation.

## II. ISSUES TO BE RESOLVED AT RESENTENCING HEARING

The sole focus of the evidentiary hearing in this case is whether any defendant meets the following five requirements for safety-valve eligibility:

1. the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;
2. the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
3. the offense did not result in death or serious bodily injury to any person;
4. the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in section 408 of the Controlled Substances Act; and
5. not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

18 U.S.C. § 3553(f); *see* U.S.S.G. § 5C1.2(a).

The government does not dispute that each defendant, by having no more than one criminal history point, meets the first requirement for safety-valve relief, *see* JSR at 2, 6, 11, and no defendant disputes that he has not (yet) met the fifth requirement by truthfully participating in a debriefing with the government about not only the offense of conviction but also "all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan," 18 U.S.C. § 3553(f)(5).

In addition to the fifth requirement being currently unmet, the JSR indicates that the parties dispute the following issues pertinent to each defendant's safety-valve eligibility: (1) whether Murillo was an organizer, leader, manager, or supervisor in, or possessed a dangerous weapon in connection with, the offense, JSR at 2, 3; (2) whether Membache was an organizer, leader, manager, or supervisor in, or possessed a dangerous weapon in connection with, the offense, *id.* at 6, 7; (3) whether Rendon possessed a dangerous weapon in connection with the offense, *id*. at 11 ("[r]egarding specific offense characteristics" for Rendon, government stating, "as with [Murillo] and [Membache], these relate to possession of a dangerous weapon").[2] In addition to disputing the factual bases for the government's position that the defendants are ineligible for safety-valve relief—a factual dispute appropriately resolved at an evidentiary hearing—Murillo and Membache press three legal arguments as support for their contention that the government is precluded from presenting evidence or argument to the Court or to the Probation Office as to their aggravated roles or weapons possession. *See id.* at 4–5, 7–10. None of these legal arguments is persuasive or legally sustainable, however.

First, Murillo and Membache contend the government may neither argue nor present evidence that they are organizers, leaders, managers, or supervisors because the government agreed, in paragraph 9 of the Plea Agreements, "not to seek any of the adjustments set out in U.S.S.G. Chapter 3, Part B." *See* JSR at 4–5, 7–10. The law is well settled that, "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *United States v.*

---

[2] The government's assertion that Rendon possessed a dangerous weapon is puzzling because the government elsewhere represents that Rendon meets all of the criteria for safety-valve relief, except for the truthful proffer condition. JSR at 11; Rough Transcript of Status Conf. (Oct. 29, 2018) ("H'rg Tr. (Rough)") at 10:19–11:11. If Rendon possessed a dangerous weapon in connection with the offense, he would be ineligible for safety-valve relief. *See* 18 U.S.C. § 3553(f)(2).

9

*Henry*, 758 F.3d 427, 431 (D.C. Cir. 2014) (quoting *Santobello v. New York*, 404 U.S. 257, 262 (1971)). In interpreting the terms of a plea agreement, the principles of contract law govern and, in evaluating whether a breach has occurred, the Court looks to the reasonable understanding of the parties, construing any textual ambiguities against the government. *Henry*, 758 F.3d at 431. The defendant bears the burden of proving any breach by the government, which if proven, warrants specific performance of the agreement or withdrawal of the guilty plea. *Id.* At the same time, "the government must be held to the promises it made, it will not be bound to those it did not make. To do otherwise is to strip the bargaining process itself of meaning and content." *United States v. Ahn*, 231 F.3d 26, 37 (D.C. Cir. 2000) (internal quotation marks omitted).

While the defendants rely on a sentence in paragraph 9 of the Plea Agreements, this sentence cannot be read in isolation from the rest of the contextual language in that paragraph and other provisions in the Plea Agreements. The sentence in paragraph 9 immediately following the sentence relied upon by the defendants states: "The Defendant is permitted to request relief under Safety Valve provisions, and the Government is permitted to argue that the Safety Valve provisions do not apply to the maritime offense to which the Defendant has agreed to plead guilty and that, in any event, the Defendant does not meet the criteria to qualify for Safety Valve relief." Plea Agreements ¶ 9. As this contextual language makes clear, while the government agreed not to seek any Chapter 3 adjustments, the government reserved the right to argue that the defendants do "not meet the criteria to qualify for Safety Valve relief," *id.*, which criteria require that the defendant not be an organizer, leader, manager, or supervisor, 18 U.S.C. § 3553(f)(4), or have possessed a dangerous weapon in connection with the offense, *id.* § 3553(f)(2).

Given the fact that the guideline determination generally, along with any Chapter 3 role adjustments, was unnecessary to resolve if the Rule 11(c)(1)(C) plea agreement was accepted by the Court with the recommended sentence at the mandatory minimum, the government had no reason to seek, and therefore agreed not to seek, any role adjustments. To the same extent that the defendants were "permitted to request relief under Safety Valve provisions," Plea Agreements ¶ 9, however, the government reserved its right to respond that the defendants were ineligible. This reservation of the right to address safety-valve eligibility operates effectively as a carve-out to the previous sentence such that the government agreed not to seek any role adjustment, except as relevant to argue that the safety-valve criteria were not met.

Moreover, the government further expressly reserved the right to provide all relevant information in yet other provisions in the Plea Agreements. Specifically, paragraph 8 provides that the government "may inform the Court and the Probation Office of all facts pertinent to the sentencing process, including all relevant information concerning the offenses committed, whether charged or not, as well as concerning the Defendant and the Defendant's background." *Id.* ¶ 8. Likewise, paragraph 12 provides that the government "reserves the right to dispute sentencing factors or facts material to sentencing and to use any information or material . . . to correct any factual errors or positions asserted by the Probation Office or the Defendant." *Id.* ¶ 12. Thus, in addition to the carve-out to address safety-valve eligibility, the government, in paragraph 12, eschewed any gag on the arguments, information or evidence the government could present relating to "dispute[d] sentencing factors," which paragraph 9 makes clear includes the defendants' eligibility for safety-valve relief.

The defendants point for support to commentary for the safety-valve guideline, but this is unavailing. *See* JSR at 7. This commentary defines "organizer, leader, manager, or supervisor

of others in the offense, as determined under the sentencing guidelines," in U.S.S.G. § 5C1.2(a)(4), to mean "a defendant who receives an adjustment for an aggravating role under § 3B1.1." *See* U.S.S.G. § 5C1.2(a)(4), cmt. n.5. This commentary does not block argument or evidence about an aggravated role for purposes of safety-valve eligibility where the government has otherwise agreed not to seek such a formal role adjustment under Chapter 3. The reason is that the Court, not the government, makes the final determination of the applicability of such a role adjustment enhancement, after considering the information presented by the government, the Probation Office, and defense counsel, regardless of whether the government itself seeks that adjustment. *See United States v. Felder*, 563 F. Supp. 2d 160, 166 (D.D.C. 2008) ("What the [plea] agreement precluded was the government asking for such an enhancement, not the court applying one."). In sum, the government is not precluded by the plea agreements from arguing that the defendants are ineligible for safety-valve relief because they were organizers, managers, leaders, or supervisors.

Second, relatedly, Membache argues that the government has already committed a *Santobello* violation, in breach of the plea agreements, by providing information undergirding the Probation Office's PSR recommendation of a leadership or managerial role adjustment for him, and risks further breach by arguing that the defendants are ineligible for safety-valve relief due to their aggravated roles. JSR at 7–8. This argument is without merit. As noted, the Plea Agreements do not preclude the government from disputing the defendants' eligibility for safety-valve relief and providing all relevant information to both the Probation Office and the Court to resolve disputed sentencing issues, but only from affirmatively seeking a Chapter 3 role adjustment.

Furthermore, providing information to the Probation Office and the Court that may lead to a judicial determination for an aggravated role adjustment does not breach the government's promise not to seek a sentencing enhancement. *See, e.g.*, *United States v. Yunzhong Chen*, No. 18-30021, 2018 WL 5994970 (mem.), at *1 (9th Cir. Nov. 15, 2018) (finding no breach of plea agreement, in which government agreed to a guidelines calculation indicating defendant was minor participant, where government made arguments about his role in the conspiracy that "were properly responsive to [defendant]'s request for home confinement"); *United States v. Carbajal-Váldez*, 874 F.3d 778, 785–86 (1st Cir. 2017) (finding no breach of plea agreement, in which government agreed not to seek role adjustment and left open possibility of reduction if defendant proved satisfaction of safety-valve requirements, when government at sentencing confirmed Probation's finding that defendant was captain of a boat used to carry narcotics, triggering enhancement under U.S.S.G. § 2D1.1(b)(3)(C), and noting that "actions such as merely responding in factual terms to the sentencing court's questions or acknowledging the correctness of admittedly accurate guideline calculations do not amount to a breach of a plea agreement"); *United States v. Casillas*, 853 F.3d 215, 218 (5th Cir. 2017) (stating that "[t]he Government does not breach a plea agreement by disclosing pertinent factual information to a sentencing court," and, in fact, "the Government does not have a right to make an agreement to stand mute in the face of factual inaccuracies or to withhold relevant factual information from the court") (internal quotation marks omitted) (quoting *United States v. Block*, 660 F.2d 1086, 1092 (5th Cir. Unit B Nov. 1981)); *United States v. Moncivais*, 492 F.3d 652, 664 (6th Cir. 2007) (distinguishing between advocacy and providing the sentencing court with relevant factual information); *United States v. Maldonado*, 215 F.3d 1046, 1052 (9th Cir. 2000) ("[D]espite a plea agreement to make certain recommendations, the government has a duty to ensure that the court has complete and

accurate information, enabling the court to impose an appropriate sentence."); *United States v. Williamsburg Check Cashing Corp.*, 905 F.2d 25, 28 (2d Cir. 1990) ("[A]n agreement to keep the judge ignorant of pertinent information cannot be enforceable, because a sentencing court must be permitted to consider any and all information that reasonably might bear on the proper sentence for the particular defendant, given the crime committed.") (internal quotation marks omitted).

The government's overarching obligation to provide relevant information to assist the Court in resolving disputed sentencing issues is consistent with Congress' direction that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court . . . may receive and consider for the purpose of imposing an appropriate sentence." *Roberts v. United States*, 445 U.S. 552, 556 (1980) (brackets in original) (internal quotation marks omitted) (quoting 18 U.S.C. § 3577, recodified at *id.* § 3661); *accord United States v. Delaney*, 651 F.3d 15, 20 (D.C. Cir. 2011).

Finally, Membache argues that the government is precluded from presenting evidence that the defendant possessed a dangerous weapon because the government lodged no objection to the lack of a firearm enhancement in his PSR. JSR at 9. This argument ignores the fact that the government had no need to object to the guideline determination set out in the PSR because the parties agreed that the Court need not resolve any disputes regarding the guidelines upon accepting the Rule 11(c)(1)(C) agreements and adopting the recommendation to impose a 120-month sentence. *See* Sentencing Tr. at 29:9–31:4 (Membache's counsel arguing that the Court need not determine matters irrelevant to sentencing). Now, however, information concerning the defendants' possession of a weapon is newly relevant to address their eligibility for safety-valve relief, and the government is permitted to present relevant evidence for purposes of resentencing.

*See, e.g.*, *United States v. Miller*, 890 F.3d 317, 328 (D.C. Cir. 2018) (on remand for resentencing, a district court may consider new arguments or new facts that are made newly relevant by the Court of Appeals' decision, whether by the reasoning or by the result).

Accordingly, the government is permitted to argue and present evidence for purposes of resentencing that the defendants are ineligible for safety-valve relief because they were organizers, leaders, managers, or supervisors in, or possessed a dangerous weapon in connection with, the offense of conviction.

## III. SCHEDULING

The parties responded, in the JSR, to the Court's request to address whether to stay resentencing in this case pending the Supreme Court's resolution of the pending petition for *cert.* in *Castillo v. United States*, No. 18-374, 2018 WL 4564803 (U.S. Sept. 21, 2018). Another petition has also been filed recently in the U.S. Supreme Court, that also cites the D.C. Circuit's opinion in this case as the source of a circuit split on the issue of whether MDLEA offenses qualify for safety-valve relief. *See Anchundia-Espinoza v. United States*, No. 18-6482 (U.S. Oct. 25, 2018). [3] Even if this case is not stayed pending the outcome of the *cert.* petitions in *Castillo* and *Anchundia-Espinoza*, the defendants plainly are unprepared for prompt resentencing, and other than Rendon, make no representation as to when they will be ready.

Rendon, for example, has not participated in any debriefing to the government as a prerequisite for his safety-valve eligibility, *see* JSR at 11, let alone accounted for any time necessary for the government's evaluation of that proffer and determination whether to present

---

[3] The U.S. government has since filed its opposition to the petition for *cert.* in *Castillo*, *see* Brief for the United States in Opposition, *Castillo v. United States*, No. 18-374, 2018 WL 6179400 (U.S. Nov. 21. 2018). The U.S. government's response in *Anchundia-Espinoza* is due December 28, 2018, *see* https://www.supremecourt.gov/search.aspx?filename=/docket/docketfiles/html/public/18-6482.html (last visited Nov. 30, 2018).

15

evidence at a resentencing hearing regarding the insufficiency or untruthfulness of that proffer.[4] Murillo's counsel is newly appointed and has yet to meet with his client, *id.* at 4, and detailed at the status conference the various steps he would need to take in order to be ready for resentencing, *see* H'rg Tr. (Rough) at 22:10–26:1. Indeed, if the Court were to schedule an immediate resentencing solely for Rendon, as his counsel requests, the government may be unable adequately to evaluate whether he has given a complete and truthful proffer, since that evaluation may turn on information received not only from him but from his two co-defendants and, further, any dispute by the government over Rendon's satisfaction of the fifth requirement would likely turn on evidence that overlaps significantly with such evidence relevant to his co-defendants' safety-valve eligibility. Given these circumstances, scheduling resentencing in this case immediately, as Rendon requests, would not provide a fair opportunity to all parties to fulfill the appellate mandate of assessing their eligibility for safety-valve relief in a manner that also accommodates the interests of efficient use of judicial and government resources.

Accordingly, the Court will set a Status Conference for March 8, 2019, by which point the status of any *cert.* petitions will be more clear, all defense counsel will have had time to meet with their clients, and the government will have a better sense of whether the defendants meet the fifth requirement for safety-valve relief.

---

[4] Despite Rendon's current ineligibility for safety-valve relief, one of his three attorneys has requested a December 2018 resentencing in order to participate before her planned parental leave, JSR at 20 n.8, but this defendant continues to be well represented in her absence by no less than the Federal Public Defender for the District of Columbia as well as another counsel who has participated in this case since August 28, 2015. Minute Order (Aug. 28, 2015).

## IV. ORDER

Based on the foregoing, it is hereby

**ORDERED** that the parties shall file, by March 1, 2019, a Joint Status Report providing an update on whether each of the defendants has "truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan," 18 U.S.C. § 3553(f)(5), whether the government has been able to evaluate those proffers, and whether any defendant disputes that evaluation; and a proposed schedule governing further proceedings; and it is further

**ORDERED** that a Status Conference is SCHEDULED for March 8, 2019 at 9:30 AM in Courtroom 22A before Chief Judge Beryl A. Howell.

**SO ORDERED.**

Date: November 30, 2018

_____
BERYL A. HOWELL
Chief Judge